IN UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LESLIE JAMES PICKERING,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>CENTRAL INTELLIGENCE AGENCY,<br><br>　　　　　Defendant. | Case No. 24-cv-00081 |

**DECLARATION OF MARY C. WILLIAMS,
LITIGATION INFORMATION REVIEW OFFICER
INFORMATION REVIEW AND RELEASE DIVISION
CENTRAL INTELLIGENCE AGENCY**

I, MARY C. WILLIAMS, hereby declare and state:

**I.   INTRODUCTION**

　　1.   I currently serve as the Litigation Information Review Officer ("LIRO") for the Information Review and Release Division at the Central Intelligence Agency ("CIA" or "Agency"), a position I have held since November 2023. As the LIRO, I am responsible for ensuring that any determinations as to the release or withholding of documents or information under my purview are proper and do not jeopardize the national security of the United States. I am also responsible for, among other things, the classification review of CIA documents and information that may be the subject of court proceedings

pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

2. I am a senior CIA official and hold original classification authority at the TOP SECRET level under written delegation of authority pursuant to section 1.3(c) of Executive Order 13526, 75 Fed. Reg. 707 (Jan. 5, 2010). This means that I am authorized to assess the current, proper classification of CIA information, up to and including TOP SECRET information, based on the classification criteria of Executive Order 13526 and applicable regulations.

### A. Professional Background

3. Prior to serving as the LIRO, I served as the Acting Information Review Officer ("IRO") for the Litigation Information Review Office, performing the same duties I presently perform as the LIRO, but in an acting capacity. Prior to that, I served as the Criminal and Civil Team ("CCT") Lead in the Litigation Information Review Office, where I was responsible for, among other things, reviewing CIA information that is subject to the Classified Information Procedures Act ("CIPA") (18 U.S.C. App. 3 §§ 1-16) in connection with criminal proceedings. As CCT Lead, I was responsible for ensuring that any determinations to release Agency information under my purview were proper and did not jeopardize the national security. Prior to becoming CCT Lead, I served as an Associate

2

IRO for 19 months. In that role, I was responsible for conducting second-line reviews of Agency information subject to pending litigation and making classification and release determinations regarding such information when necessary. Prior to that, I served as a Security Specialist with the Department of Justice for over 15 years.

### B. Purpose of Declaration

4. Through the exercise of my official duties, I have become familiar with this civil action and Plaintiff's FOIA request. I make the following statements based upon my personal knowledge and information made available to me in my official capacity as the LIRO.

5. This declaration is submitted in support of the Government's motion for summary judgement.

6. The purpose of this declaration is to explain and justify, to the greatest extent possible on the public record, the CIA's actions and response to Plaintiff's FOIA request. For the Court's convenience, the remainder of this declaration is divided into three parts: Part II provides the procedural background of the case; Part III discusses the searches for unclassified records conducted in connection with Plaintiff's request; and Part IV explains the CIA's response.

## II. CASE BACKGROUND

7. This matter concerns Plaintiff's 11 November 2022 FOIA request seeking records about himself. A true and correct copy of the request is attached herein as **Exhibit A**.

8. By letter dated 17 November 2022, the CIA acknowledged receipt of Plaintiff's FOIA request and assigned reference number P-2023-00114 to the matter. A true and correct copy of this letter is attached herein as **Exhibit B**.

9. By letter dated 1 May 2023, the CIA provided a final response to Plaintiff's FOIA request. The CIA explained that after conducting a search reasonably calculated to uncover all relevant documents, the CIA "did not locate any responsive records that would reveal a publicly acknowledged affiliation with the CIA." For records that would reveal a classified association between the CIA and Plaintiff, the CIA responded that it could neither confirm nor deny the existence of such records pursuant to FOIA exemptions (b)(1) and (b)(3) and Privacy Act exemptions (j)(1) and (k)(1). CIA uses this response, commonly referred to as a Glomar response,[1] when the mere fact of the existence or nonexistence of requested records

---

[1] The origins of the Glomar response date back to the D.C. Circuit's decision in Phillippi v. CIA, 546 F.2d 1009 (D.C. Cir. 1976), which affirmed the CIA's use of the "neither confirm nor deny" response to a FOIA request for records concerning the CIA's reported contacts with the media regarding Howard Hughes' ship, the Hughes Glomar Explorer.

4

is classified or protected by statute, as explained further below. A true and correct copy of this letter is attached herein as **Exhibit C**.

10. By letter dated 23 May 2023, Plaintiff submitted an administrative appeal to the CIA, challenging the CIA's Glomar response. A true and correct copy of this letter is attached herein as **Exhibit D**.

11. The CIA received Plaintiff's administrative appeal but did not respond with a letter acknowledging receipt of Plaintiff's administrative appeal.

12. By letter dated 23 October 2023, Plaintiff inquired about the status of his administrative appeal. A true and correct copy of this letter is attached herein as **Exhibit E**.

13. Plaintiff filed the above-captioned lawsuit on 23 January 2024, and the CIA filed its Answer on 23 February 2024.

### III. THE CIA's SEARCH FOR UNCLASSIFIED RECORDS

14. The CIA's search for records responsive to Plaintiff's request was limited to records that would reveal an open, unclassified, or officially acknowledged affiliation or relationship between the CIA and Plaintiff. The CIA information management professionals who conducted the search have access to pertinent records; are knowledgeable about the Agency's records systems and are qualified to search those records systems; and

regularly search those records systems in the course of their professional duties.

15. The CIA information management professionals who processed Plaintiff's request conducted a thorough and diligent search of the relevant systems of records that was reasonably calculated to locate responsive records that might reflect an unclassified or otherwise openly acknowledged relationship between the CIA and Plaintiff. Given the age and type of records requested, the Agency employees searched for responsive documents in several records systems that were deemed reasonably likely to contain responsive records, should those records exist. Those systems include: (1) a system containing electronic versions of all Agency records that have been reviewed and/or compiled for potential public release; (2) multiple systems containing information regarding personnel affiliated with the CIA; and (3) a system containing security records.

16. The CIA's search was scoped based on the terms and date parameters specified in Plaintiff's FOIA request. As requested by Plaintiff, the CIA information management professionals conducted a search for the term "Leslie Pickering." The Agency employees also used biographical data provided by Plaintiff in their search, including his social security number.

17. As stated in the CIA's 1 May 2023 final response, the search did not yield any responsive records that would reveal a publicly acknowledged affiliation between the CIA and Plaintiff.

18. Following the filing of this action, information management professionals analyzed the initial search and determined that it was reasonably calculated to uncover all records responsive to Plaintiff's request.

19. As discussed below, with regard to any records responsive to Plaintiff's FOIA request that would reveal a classified or unacknowledged connection to the CIA, the Agency invoked a Glomar response, neither confirming nor denying the existence or nonexistence of such records. The fact of the existence or nonexistence of such records is itself currently and properly classified, as it could reveal clandestine CIA intelligence activities, sources, and methods.

## IV. The CIA'S GLOMAR RESPONSE AND EXEMPTIONS CLAIMED

20. The CIA processed Plaintiff's request for records under both FOIA and the Privacy Act, as both acts applied to the request. Additionally, as a matter of policy, individuals' requests for access to records about themselves under the Privacy Act are also processed under the FOIA, as well, to ensure the maximum possible disclosure to the requester.

21. For the reasons discussed below, the CIA can neither confirm nor deny the existence or nonexistence of records that

would reveal a classified association between the CIA and Plaintiff pursuant to FOIA exemptions (b)(1) and (b)(3) and Privacy Act exemptions (j)(1) and (k)(1).[2]

22. The following subsections address the proper use of Exemptions (b)(1), (b)(3), (j)(1), and (k)(1) as they relate to the Glomar response.

### A.   Exemption (b)(1)

23. Exemption (b)(1) provides that FOIA does not require the production of records that are: "(A) specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive Order." 5. U.S.C. § 552(b)(1). Here, Executive Order 13526 is the operative Executive Order that governs classification.

24. Consistent with sections 1.1(a) and 3.6(a) of Executive Order 13526, as an original classification authority, I have determined that the existence or nonexistence of the requested records in Plaintiff's request is a currently and properly classified fact that concerns "intelligence activities (including covert action), [or] intelligence sources or methods"

---

[2] While Plaintiff did not challenge CIA's Glomar assertion under exemption (b)(3) in either his administrative appeal with the Agency or in his Complaint filed in this action, it is addressed in this declaration because, as explained below, it provides a separate and independent basis for justifying the CIA's Glomar response.

under section 1.4(c) of the Executive Order. Further, I have determined that this information is owned by and is under the control of the U.S. Government, and the unauthorized disclosure of this information reasonably could be expected to result in damage to national security.

25. In accordance with section 1.7(a) of the Executive Order, my determination that the existence or nonexistence of the requested records is a classified fact has not been made to conceal violations of law, inefficiency, or administrative error; to prevent embarrassment to a person, organization, or agency; to restrain competition; or to prevent or delay the release of information that does not require protection in the interests of national security.

26. In most cases, upon receiving a FOIA request, the CIA will conduct searches for any responsive documents subject to FOIA in its holdings and provide the requester with all reasonably segregable, non-exempt information contained in those records. In this common scenario, the CIA's response – either to provide or not provide the records sought – serves to confirm the existence or nonexistence of CIA records responsive to the FOIA request. In such a scenario, the fact that the CIA does or does not possess responsive records is, in and of itself, unclassified, even though the information contained within the records may be classified.

27. However, given the CIA's mandate to collect and analyze foreign intelligence and to conduct counterintelligence, there are many instances in which the CIA cannot reveal whether or not it possesses responsive records because the mere confirmation or denial of the existence of responsive records would, in and of itself, reveal a classified fact: namely, whether the CIA has an intelligence interest in, or a clandestine connection to, a particular individual, group, subject matter, or activity. In those cases, the CIA asserts a Glomar response, because the existence or nonexistence of CIA records responsive to the request is a currently and properly classified fact, the disclosure of which reasonably could be expected to cause damage to the national security of the United States. Specifically, disclosure of such information could provide insight into the CIA's priorities, resources, and capabilities and could be used by terrorist organizations, foreign intelligence services, and other hostile adversaries to undermine CIA intelligence activities and attack the United States and its interests.

28. A defining characteristic of the CIA's intelligence activities is that they are carried out through clandestine means, and therefore they must remain secret in order to be effective. In the context of FOIA, this means that the CIA must carefully evaluate whether its response to a FOIA request could

10

jeopardize the clandestine nature of the Agency's intelligence activities or otherwise reveal previously undisclosed information about CIA sources, methods, capabilities, authorities, interests, relationships with domestic or foreign entities, strengths, weaknesses, personnel, and/or resources.

29. To maintain the effectiveness of the Glomar response, the CIA invokes the response consistently, in all cases where the existence or nonexistence of records responsive to a FOIA request is a classified fact, including instances in which the CIA does not possess records responsive to a particular request. If the Agency were to invoke a Glomar response only in cases in which it possesses responsive records, that response could be interpreted as an admission that responsive records exist and could have the effect of confirming classified information. This practice would reveal the very information that the CIA must protect in the interest of national security.

30. In this case, the CIA issued a Glomar response stating that it could neither confirm nor deny the existence or nonexistence of records that may reveal a classified connection between the CIA and Plaintiff. An acknowledgement confirming or denying the existence or nonexistence of such records would reveal classified intelligence information and jeopardize the clandestine nature of the Agency's intelligence activities and/or disclose information about CIA's sources and methods. For

example, if the CIA were to confirm the existence of responsive records, such response could reveal that the CIA had some type of involvement in, affiliation with, connection to, or intelligence interest in a particular individual – Plaintiff in this case – or a group, subject matter, or activity related to Plaintiff. On the other hand, if the CIA denied having records responsive to Plaintiff's request, that response could reveal that the CIA did not have any type of involvement in, affiliation with, connection to, or intelligence in Plaintiff or a group, subject matter, or activity related to Plaintiff.

    31. In either case, confirmation or denial of the existence or nonexistence of such records would implicate sensitive information about the CIA's intelligence activities and sources and methods in a manner that would be reasonably expected to cause damage to national security. As a general matter, the CIA does not reveal whether it has or had involvement in, connection to, or intelligence interests in specific individuals and/or particular groups. Confirmation or denial of the existence or nonexistence of records responsive to Plaintiff's request would do precisely that, and doing so could reveal – among other things – sensitive information about the CIA's intelligence interests, activities, technical capabilities, and authorities.

32. For similar reasons, the CIA does not reveal the identity of its human sources. Revealing the identity of a confidential source could expose Agency tradecraft, other human sources, and specific intelligence interests and activities. Human sources can be expected to furnish information to the CIA only when they are confident the CIA can and will do everything in its power to prevent the public disclosure of their cooperation. In the case of a person who has been cooperating with the CIA, official confirmation of that cooperation could cause the targets to take retaliatory action against that person or against that person's family or friends. It also places in jeopardy every individual with whom the cooperating individual has had contact. Thus, the indiscretion of one source in a chain of intelligence sources can damage an entire spectrum of sources. As such, confirming or denying the existence of records on a particular individual, like Plaintiff, reasonably could be expected to cause damage to U.S. national security by indicating whether or not CIA maintained any human intelligence sources related to an interest in the subject of the request.

33. For these reasons, I have determined that confirming or denying the existence or nonexistence of records responsive to Plaintiff's request could reasonably be expected to cause damage to national security. Further, this information is

currently and properly classified and is therefore exempt from disclosure under FOIA exemption (b)(1).

### B. Exemption (b)(3)

34. Exemption (b)(3) protects information that is specifically exempted from disclosure by statute. A withholding statute under exemption (b)(3) must: (A) require that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establish particular criteria for withholding or refer to particular types of matters to be withheld. 5 U.S.C. § 552(b)(3).

35. Section 102A(i)(1) of the National Security Act of 1947, as amended, 50 U.S.C. § 3024(i)(1) (the "National Security Act"), provides that the Director of National Intelligence ("DNI") "shall protect intelligence sources and methods from unauthorized disclosure." Accordingly, the National Security Act constitutes a federal statute which "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue." 5 U.S.C. §552(b)(3). Under the direction of the DNI pursuant to section 102A of the National Security Act, as amended, and in accordance with section 1.6(d) of Executive Order 12333, the Director of the CIA is required to protect CIA intelligence sources and methods from unauthorized disclosure. Acknowledging or denying the existence or nonexistence of records reflecting a classified or otherwise

14

unacknowledged connection between the CIA and Plaintiff would reveal information that concerns intelligence sources and methods – information protected under the National Security Act.

36. Furthermore, section 6 of the CIA Act provides that the CIA shall be exempted from the provisions of any law which requires the publication or disclosure of the "organization or functions of the Agency, or of the names, official titles, salaries, or numbers of personnel employed by CIA". The CIA Act constitutes a federal statute that "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). As discussed above, confirming the existence or nonexistence of records on a particular individual, like Plaintiff, could reveal how CIA collects (or does not collect) certain information on particular subjects or individuals and/or could reveal information about the methods by which the Agency does (or does not) effectuate such collection, both of which pertain to intelligence collection – a function of the Agency. Thus, I have determined that confirming or denying the existence or nonexistence of records responsive to Plaintiff's request is protected from disclosure under the CIA Act.

37. In contrast to exemption (b)(1), exemption (b)(3) does not require the CIA to identify and describe the damage to national security that reasonably could be expected to result

15

should the information be disclosed. Nonetheless, I refer the Court to the paragraphs above for a description of the damage to the national security should anything other than a Glomar response be required of the CIA in this case.

38. Accordingly, the fact of the existence or nonexistence of responsive records is exempt not only under exemption (b)(1), but also under exemption (b)(3) pursuant to the National Security Act and the CIA Act. Exemptions (b)(1) and (b)(3) apply independently and co-extensively to protect from disclosure in this case CIA's intelligence sources and methods, as well as functions of the Agency.

C. **Exemption (j)(1)**

39. As previously stated, individuals' requests for access to records under the Privacy Act are processed under both the Privacy Act and FOIA. Privacy Act exemption (j)(1) authorizes the Director of the CIA ("DCIA") to exempt, via published regulation, any Agency system of records from the access and amendment provisions of subsection (d) of the Privacy Act. See 5 U.S.C. § 552a(j)(1).

40. Pursuant to the general exemption authority granted by Privacy Act exemption (j)(1), the DCIA exempted from the access provisions of the Privacy Act portions of all systems of records the CIA maintains that consist of, pertain to, or would

16

otherwise reveal intelligence sources and methods. See 32 C.F.R. § 1901.62.

41. The CIA's regulation also provides that, in processing a Privacy Act request, "the Agency shall decline to confirm or deny the existence or nonexistence of any responsive records whenever the fact of their existence or nonexistence" is currently and properly classified under the relevant Executive Order governing classification; or where the records would be "revealing of intelligence sources or methods protected pursuant to section 103(c)(5) of the National Security Act of 1947."

42. As discussed above, where records responsive to Plaintiff's FOIA request would reveal a classified or unacknowledged connection to the CIA, the Agency can neither confirm nor deny the existence or nonexistence of such records because to do so would tend to reveal a classified fact. Executive Order 13526 and the National Security Act are designed to protect against disclosure in this instance, and this information is thus exempt from release.

43. For these reasons, the CIA has applied exemption (j)(1) to currently and properly classified information.

**D. Exemption (k)(1)**

44. Privacy Act exemption (k)(1), 5 U.S.C. §552a(k)(1), a corollary to FOIA exemption (b)(1), permits the head of any agency to promulgate rules exempting any system of records

17

within the agency from disclosure if the system of records is subject to the provisions of 5 U.S.C. §552(b)(1). In other words, information that is classified under criteria established by an Executive Order is exempt from disclosure pursuant to Privacy Act exemption (k)(1) in conjunction with FOIA exemption (b)(1). The DCIA has claimed Privacy Act exemption (k)(1) by promulgating 32 C.F.R. § 1901.63(a) (exempting classified information from the disclosure provisions under the Privacy Act).

45. As discussed above, unauthorized disclosure of information revealing a classified or unacknowledged connection between Plaintiff and the CIA, or confirmation of a lack thereof, could reasonably be expected to cause serious damage to U.S. national security. Thus, this information is currently and properly classified under Executive Order 13526 and is, therefore, exempt from disclosure under Privacy Act exemption (k)(1).

## V.   CONCLUSION

46. In this case, the CIA conducted a thorough search that was reasonably calculated to locate records that would reflect an *unclassified* or otherwise openly acknowledged affiliation between the CIA and Plaintiff. No responsive records were found. For records that would reveal a classified connection between the CIA and Plaintiff, I have determined that the existence or

18

nonexistence of such records is itself a currently and properly classified fact, and as a result, the only appropriate response is for the CIA to neither confirm nor deny the existence of such records under FOIA exemptions (b)(1) and (b)(3) and Privacy Act exemptions (j)(1) and (k)(1).

* * *

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed this 16th day of April 2024.

_____
Mary C. Williams
Litigation Information Review Officer
Information Review and Release Division
Central Intelligence Agency