UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LESLIE JAMES PICKERING,

      Plaintiff,

      v.

CENTRAL INTELLIGENCE
AGENCY,

      Defendant.

1:24-CV-00081

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR RECONSIDERATION

### INTRODUCTION

This Memorandum of Law is submitted on behalf of defendant Central Intelligence Agency ("CIA") in support of its motion for reconsideration, pursuant to Fed. R. Civ. P. 54(b). This case concerns a request made by Plaintiff to the CIA, under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

### PRELIMINARY STATEMENT

This motion to reconsider focuses on the application of the so-called Glomar doctrine. Under the Glomar doctrine, a federal agency in a response to a FOIA request, "may refuse to confirm or deny the existence of records where to answer the FOIA inquiry would cause harm cognizable under a FOIA exception." Wilner v. Nat'l Sec. Agency, 592 F.3d 60, 68 (2d Cir. 2009) (citations, internal quotation marks, and parentheticals omitted). In reviewing the CIA's motion for summary judgment, the Court analyzed the CIA's Glomar response and

ultimately ordered the CIA to submit for *in camera* review a single document: a July 17, 2001 FD-302 created by the FBI which mentions the CIA.  ECF No. 20, p. 19.

The CIA brings this motion to reconsider because, respectfully, the order requiring that the CIA produce an unredacted copy of a document for which the CIA has sufficiently alleged a credible and well-supported Glomar response would result in a likely unintended consequence.  Requiring an *in camera* submission here would defeat the very purpose of the Glomar doctrine by forcing the agency to acknowledge that it does or does not possess a particular document about a particular individual.  As will be discussed below, the Second Circuit emphasized in Wilner that *in camera* review is only appropriate as a last resort and that, if the Glomar response is sufficient – which it clearly is here, "the court should not conduct a more detailed inquiry to test the agency's judgment and expertise or to evaluate whether the court agrees with the agency's opinions."  Wilner, 592 F.3d at 76 (citations and internal quotation marks omitted).  For these reasons, the Court should reconsider its order, vacate that order, and grant summary judgment to the CIA.

## PROCEDURAL HISTORY

Plaintiff's Complaint concerns his request, dated November 11, 2022, under FOIA to the CIA seeking copies of records pertaining to himself.  Dkt. # 1, ¶ 5. "Included with that request was 'a copy of Form FD-302 dated July 17, 2001, which Mr. Pickering secured from the FBI under FOIA.'"  ECF No. 20, p. 2 (quoting ECF No. 11-2 at 2, 5.).

2

By letter dated November 17, 2022, the CIA acknowledged receipt of Plaintiff's FOIA request and assigned reference number P-2023-00114 to the matter. Declaration of Mary C. Williams ("Williams Dec.") at ¶ 8 and Ex. B.[1]

By letter dated May 1, 2023, the CIA provided a final response to Plaintiff's FOIA request. The CIA explained that after conducting a search reasonably calculated to uncover all relevant documents, the CIA "did not locate any responsive records that would reveal a publicly acknowledged affiliation with the CIA." For records that would reveal a classified association between the CIA and Plaintiff, the CIA responded that it could neither confirm nor deny the existence of such records pursuant to FOIA Exemptions 1 and 3, and Privacy Act Exemptions (j)(1) and (k)(1).[2] Williams Dec. at ¶ 9.

By letter dated May 23, 2023, Plaintiff submitted an administrative appeal to the CIA, challenging the CIA's *Glomar* response. Williams Dec. at ¶ 10. The CIA received Plaintiff's administrative appeal but did not respond with a letter acknowledging receipt of Plaintiff's administrative appeal. Id. at ¶ 11. By letter dated October 23, 2023, Plaintiff inquired about the status of his administrative appeal. Id. at ¶ 12.

Plaintiff filed this lawsuit on January 23, 2024. ECF No. 1. The CIA filed an Answer on February 23, 2024. ECF No. 6.

The CIA moved for summary judgment on April 17, 2024.  DCF No. 11.  Plaintiff opposed the motion on May 15, 2024.  ECF No. 15.  The CIA filed a reply memorandum on May 29, 2024.  ECF No. 16.

---

[1] The Williams Declaration was filed with the CIA's summary judgment motion and can be found at docket number 11-1.

[2] The CIA uses this response, commonly referred to as a Glomar response, when the mere fact of the existence or nonexistence of requested records is classified or protected by statute. Williams Dec. ¶ 9.

On January 15, 2026, the Court (Hon. Geoffrey W. Crawford) issued an Order on the CIA's summary judgment motion. ECF No. 20. The Court initially found "that the CIA has met its burden to show that it conducted an adequate search for responsive records that would reveal a publicly acknowledged affiliation between the CIA and Plaintiff." ECF No. 20, p. 10. The Court next considered CIA's Glomar response. In opposition to the Glomar response, Plaintiff argued that the redacted July 17, 2001 FD-302 released to Plaintiff by the FBI in a prior FOIA lawsuit triggered the official acknowledgment exception to the Glomar doctrine. ECF No. 20, p. 12. The Court agreed with the CIA "that the Form FD-302 is not a basis for the official-acknowledgment exception" because it was "information released by the FBI, not by the CIA." ECF No. 20, pp. 12-13. The Court then analyzed the CIA's claimed exemptions under the Privacy Act and FOIA. The Court found that the CIA established that Privacy Act exemption (j)(1) was applicable. ECF No. 20, pp. 13-14. On the question of the applicability of FOIA Exemption (b)(3), the Court held that the National Security Act and the CIA Act constituted withholding statutes under FOIA Exemption (b)(3) and that the CIA declaration in support of the motion for summary judgment is accorded substantial weight. ECF No. 20, pp. 15-16. However, the Court "elect[ed] to exercise its discretion under 5 U.S.C. § 552(a)(4)(B) and [] order[ed] Defendant to produce an unredacted copy of the Form FD-302 for in camera inspection." ECF No. 20, p. 16. With respect to FOIA Exemption (b)(1), the Court held that the CIA's motion "supports the conclusion that the existence or non-existence of the information that Mr. Pickering seeks logically falls within FOIA Exemption (b)(1)." ECF No. 20, p. 18. However, the Court, noting that one of the bases for the applicability of FOIA Exemption (b)(1) is Executive Order 12,526, § 1.7, which states that information may not be deemed classified if it may "conceal violations of

law, inefficiency, or administrative error [ or] prevent embarrassment to a person, organization, or agency," the Court "elect[ed] to exercise its discretion under 5 U.S.C. § 552(a)(4)(B) and [] order[ed] Defendant to produce an unredacted copy of the Form FD-302 for in camera inspection."  ECF No. 20, pp. 18-19.  The Court concluded that

> If the court's review of that document reveals no basis for application of the limitations in § 1.7(a) or any support for Mr. Pickering's contention that the CIA engaged in the unauthorized or illegal investigative activities, then the court will conclude that the CIA has met is burden to prove the applicability of FOIA Exemption (b)(l) (and also (b)(3), discussed above). If the court's review of the Form FD-302 supports Mr. Pickering's contention, then the CIA will not be entitled to summary judgment. In either case, in camera review will facilitate the court's de novo review and will support confidence in whatever result is ultimately reached.

ECF No. 20, p. 19.

## POINT I

### THE COURT SHOULD RECONSIDER ITS DECISION TO ORDER THE *IN CAMERA* INSPECTION

#### A.      Standard of Review on a Motion for Reconsideration

"An interlocutory order 'is subject to revision at any time before the entry of [final] judgment.'" Fed. R. Civ. P. 54(b); Tripathy v. Brotz, No. 6:22-CV-06469-FPG, 2023 WL 3603682, at *1 (W.D.N.Y. May 23, 2023).  "Thus, upon a motion to reconsider a 'district court has the discretion to reconsider, and if appropriate, revise an interlocutory order.'" Tripathy, 2023 WL 3603682, at *1 (quoting Kliszak v. Pyramid Mgmt. Group., No. 96-CV-0041E, 1998 WL 268839, at *1 (W.D.N.Y. Apr. 30, 1998)).  "Reconsideration and revision of a prior decision is generally justified in any one of the following three circumstances: (1) an intervening change in controlling law; (2) new evidence; or (3) the need to correct a clear error of law or to prevent manifest injustice." Tripathy, 2023 WL 3603682, at *1.

"The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp. Inc., 70 F.3d 255, 257 (2d Cir. 1995). "A motion to reconsider will not be granted where the moving party is merely trying to relitigate an already decided issue," Padilla v. Maersk Line, Ltd., 636 F. Supp. 2d 256, 258–59 (S.D.N.Y. 2009), because "reconsideration of a previous order by the Court is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." R.F.M.A.S., Inc. v. Mimi So, 640 F. Supp. 2d 506, 509 (S.D.N.Y. 2009) (internal quotation marks and citation omitted). The decision to grant or deny a motion for reconsideration rests within "the sound discretion of the district court." Aczel v. Labonia, 584 F.3d 52, 61 (2d Cir. 2009)).

**B.     Governing Law Concerning a <u>Glomar</u> Response in a FOIA Action**

"An agency issues what is known as a *Glomar* response in response to a FOIA request when it refuses to confirm or deny the existence of responsive records on the ground that even to acknowledge records' existence itself would cause the harm underlying a FOIA exception." Am. C.L. Union v. Dep't of Def., 322 F. Supp. 3d 464, 473 (S.D.N.Y. 2018) (citing Gardels v. CIA, 689 F.2d 1100, 1102-03 (D.C. Cir. 1982). "The *Glomar* doctrine has its origins in a 1976 case before the United States Court of Appeals for the District of Columbia, *Phillippi v. CIA*, 546 F.2d 1009 (D.C. Cir. 1976), in which the CIA refused to respond to a FOIA request pertaining to the oceanic research ship the Hughes Glomar Explorer. The CIA based its refusal on the ground 'that, in the interest of national security, involvement by the U.S. government in the activities which are the subject matter of [plaintiff's]request [could] neither

6

be confirmed or denied.'" ACLU, 322 F. Supp.3d at 473-74 (quoting Phillippi, 546 F.2d at 1012). "The *Glomar* doctrine is in large measure a judicial construct, an interpretation of FOIA exemptions that flows from their purpose rather than their express language." ACLU, 322 F. Supp.3d at 474 (quoting Am. Civil Liberties Union v. CIA, 710 F.3d at 431)).

In Wilner, the Second Circuit confirmed that it, like the D.C. Circuit, recognizes the viability of a Glomar response where factually justified. 592 F.3d at 68-69. The Second Circuit explained that an agency may properly invoke the Glomar doctrine and "refuse to confirm or deny the existence of certain records . . . if [a] FOIA exemption would itself preclude the *acknowledgement* of such documents." Am. Civil Liberties Union v. Dep't of Defense, 752 F. Supp.2d 361, 364 (S.D.N.Y. 2010) (quoting Wilner, 592 F.3d at 68 (emphasis in original)). "To properly employ the *Glomar* response to a FOIA request, an agency must tether its refusal to respond … to one of the nine FOIA exemptions." Wilner, 592 F.3d at 68 (citations and internal quotation marks omitted). "The agency 'resisting disclosure' of the requested records 'has the burden of proving the applicability of an exemption.'" Id. "The agency may meet its burden by submitting a detailed affidavit showing that the information logically falls within the claimed exemptions." Id. "In evaluating an agency's *Glomar* response, a court must accord 'substantial weight' to the agency's affidavits, 'provided [that] the justifications for nondisclosure are not controverted by contrary evidence in the record or by evidence of . . . bad faith.'" Id. (quoting Minier v. CIA, 88 F.3d 796, 800 (9th Cir. 1996)); New York Times, 965 F.3d at 114 (2d Cir. 2020) (citations and internal quotation marks omitted) ("when the information requested concerns national security, courts must accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record."). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears

logical or plausible." New York Times, 965 F.3d at 114 (quoting Wilner, 592 F.3d at 75) (internal quotation marks omitted).

As it pertains to *in camera* review in the context of a Glomar response, the Second Circuit in Wilner held that a court should conduct an *in camera* review only "if questions remain after the relevant issues have been identified by the agency's public affidavits." Id. at 75-76. The Second Circuit held that

> [i]f an agency's statements supporting exemption contain reasonable specificity of detail as to demonstrate that the withheld information logically falls within the claimed exemption and evidence in the record does not suggest otherwise ... the court should not conduct a more detailed inquiry to test the agency's judgment and expertise or to evaluate whether the court agrees with the agency's opinions.

Wilner, 592 F.3d at 76 (quoting Larson v. Dep't of State, 565 F.3d 857, 865 (D.C. Cir. 2009)).

## C.    Discussion

Here, respectfully, the order requiring the CIA to submit the July 17, 2001 FD-302 for *in camera* inspection was a clear error of law. Initially, as the Court acknowledged, the CIA appropriately "tethered" its Glomar response to FOIA exemptions, namely Exemptions (b)(1) and (b)(3). ECF No. 20, p. 11. Next, the CIA clearly made a detailed "showing that the information logically falls within the claimed exemptions." Wilner, 592 F.3d at 68. Indeed, the Court quoted at length from the comprehensive agency declaration with respect to both claimed exemptions. ECF No. 20, pp. 15-16, 17-18. As the Court itself acknowledged, the CIA's declaration is entitled to "substantial weight." ECF No. 20, p. 16. However, nowhere in the order was it found that the CIA's "justification for invoking a FOIA exemption" was "[il]logical or [im]plausible." New York Times, 965 F.3d at 114 (quoting Wilner, 592 F.3d at 75). In fact, with respect to FOIA Exemption (b)(1), the Court held that

the CIA's declaration "supports the conclusion that the existence or non-existence of the information that Mr. Pickering seeks logically falls within FOIA Exemption (b)(1)." ECF No. 20, p. 18.

A court may disregard an agency's declaration in the context of a Glomar response only if "the justifications for nondisclosure are … controverted by contrary evidence in the record or by evidence of . . . bad faith." Wilner, 592 F.3d at 68 (citations and internal quotation marks omitted). Here, the CIA declaration specifically stated that the Glomar response was not made to conceal violations of law, inefficiency, or administrative error, to prevent embarrassment, to restrain competition, or to prevent or delay the release of information that does not require protection in the interests of national security. ECF No. 11-1, ¶ 25. Plaintiff offered only a conclusory statement to the contrary – speculating that "the CIA appears to have played a role in the FBI's probe of Plaintiff." ECF No. 15, p. 3. The only purported evidence in the record to support Plaintiff's speculation of an allegedly illegal investigation by the CIA is a document created by another agency that briefly makes reference to the CIA. However, such "speculation" is simply insufficient to overcome the detailed agency declaration. Wilner, 592 F.3d at 75. Indeed, the Court itself implicitly acknowledged that Plaintiff's argument was speculative by ordering the *in camera* production of the unredacted July 17, 2001 FD-302 to see if the document would provide "any support for Mr. Pickering's contention that the CIA engaged in the unauthorized or illegal investigative activities." ECF No. 20, p. 19. Since the CIA provided a detailed declaration explaining the basis and reasoning of its Glomar response, the order requiring the CIA to submit the July 17, 2001 FD-302 for *in camera* inspection was, respectfully, a clear error of law. Wilner, 592 F.3d at 76 (holding that the court should not order *in camera* inspection

where the "agency's statements supporting exemption contain reasonable specificity of detail as to demonstrate that the withheld information logically falls within the claimed exemption and evidence in the record does not suggest otherwise.").[3]

Lastly, requiring an *in camera* submission in the context of a <u>Glomar</u> response would defeat the very purpose of the <u>Glomar</u> doctrine by forcing the agency to acknowledge that it does or does not possess a particular document about a particular individual.  <u>See</u> <u>Wilner</u>, 592 F.3d at 76 (<u>quoting</u> <u>Larson</u>, 565 F.3d at 865 (D.C. Cir. 2009) ("the court should not conduct a more detailed inquiry to test the agency's judgment and expertise or to evaluate whether the court agrees with the agency's opinions.").

## CONCLUSION

For the foregoing reasons, the Court should reconsider its prior order, and grant summary judgment in CIA's favor.

**DATED**:    Buffalo, New York, February 11, 2026

MICHAEL DIGIACOMO
United States Attorney

BY:    S/MICHAEL S. CERRONE
Assistant U.S. Attorney
U.S. Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
716-843-5851
michael.cerrone@usdoj.gov

---

[3] The CIA is not, through this motion to reconsider, merely attempting to relitigate issues already briefed and argued before the Court.  Importantly, Plaintiff did not request that the July 17, 2001 FD-302 be submitted for *in camera* inspection and, thus, the issue was never addressed by either party in the briefing on the summary judgment motion.