UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

LESLIE JAMES PICKERING,                    )
                                   )
      Plaintiff,                           )
                                   )
     v.                                  )         Case No. 1:24-cv-81-GWC
                                   )
CENTRAL INTELLIGENCE AGENCY,               )
                                   )
      Defendant.                           )

**ORDER ON MOTION FOR RECONSIDERATION**
**(Doc. 23)**

Plaintiff Leslie James Pickering—self-described "environmentalist, free speech advocate,

and a proprietor of Burning Books," a Buffalo, New York bookstore—filed this Freedom of

Information Act ("FOIA") case in January 2024, challenging the Central Intelligence Agency's

("CIA") alleged failure to comply with his November 2022 FOIA request for copies of all

records pertaining to himself. (Doc. 1.) Mr. Pickering's FOIA request to the CIA included a

copy of a Form FD-302 dated July 17, 2001, which Mr. Pickering previously secured from the

FBI in an earlier FOIA case seeking disclosure of records pertaining to him.[1]  (Doc. 11-2 at 2, 5.)

The Form FD-302 refers to an FBI "[i]nvestigation on 07/17/2001 at Portland, Oregon," and the

body of the document references the CIA but is otherwise almost entirely redacted:

---

[1] The earlier case is *Pickering v. U.S. Department of Justice*, No. 14-CV-330
(W.D.N.Y.).



Date of transcription _07/17/2001_

Pursuant to a court order

to CIA

maintained in

OTHER Sealed Pursuant to Court Order
b3 -1
b6 -3
b7C -3
b7E -3,4,5

(Doc. 11-2 at 5.)  The FBI's investigation of July 17, 2001, was relatively close in time to raids conducted by the FBI's Joint Terrorism Task Force at Mr. Pickering's residence in January 2001 and April 2002 in connection with his support for Earth Liberation Front ("ELF").  (*See* Doc. 15-1 ¶ 5.)

The CIA's answer to Mr. Pickering's complaint asserts defenses, including that Mr. Pickering "is not entitled to any relief that is not provided for in 5 U.S.C. § 552(a)(4)(B)" and that he "is not entitled to compel the production of responsive records protected from disclosure by one or more of the exemptions or exclusions to FOIA, 5 U.S.C. § 552, or the Privacy Act, 5 U.S.C. § 552a." (Doc. 6 at 1.)  The CIA filed a motion for summary judgment in April 2024, asserting that it found no responsive records that would reflect any unclassified affiliation between the CIA and Mr. Pickering, and that, for records that would reveal a classified connection, the only appropriate response was a "*Glomar*" response.  (*See* Docs. 11, 11-3.)  In an Order dated January 15, 2026, the court stated that it "elects to exercise its discretion under 5 U.S.C. § 552(a)(4)(B) and to order Defendant to produce within 30 days an unredacted copy of the Form FD-302 dated July 17, 2001, for in camera inspection." (Doc. 20 at 19.)  The court has

2

since stayed that deadline until resolution of the CIA's pending motion (Doc. 23) for reconsideration of the January 15 Order.

There is some disagreement over which procedural rule governs the CIA's reconsideration motion,[2] but the parties do not dispute the applicable reconsideration standard. "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shomo v. Eckert*, 755 F. Supp. 3d 344, 347 (W.D.N.Y. 2024) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." *Id.* (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)). "These criteria are strictly construed against the moving party so as to avoid repetitive arguments on issues that have been considered fully by the court." *Id.* (quoting *Boyde v. Osborne*, No. 10-CV-6651, 2013 WL 6662862, at *1 (W.D.N.Y. Dec. 16, 2013)).

As an initial matter, Mr. Pickering does not assert that the CIA's reconsideration motion is seeking to relitigate matters already fully considered. Indeed, Mr. Pickering did not previously seek in camera review of the Form FD-302. The court ordered in camera review on its own initiative. The court is grateful for the parties' careful briefing and attention to this matter now.

The CIA asserts that requiring it to produce the Form FD-302 for in camera inspection is a clear error of law. (Doc. 23-1 at 8.) The CIA relies on the standard articulated in *Wilner* for in camera review in the context of a *Glomar* response: "A court should only consider

---

[2] Perhaps intending to invoke Fed. R. Civ. P. 59(e), the CIA's motion cites Fed. R. Civ. P. 54(b). Mr. Pickering asserts that the applicable rule is Fed. R. Civ. P. 60(b).

information *ex parte* and *in camera* that the agency is unable to make public if questions remain after the relevant issues have been identified by the agency's public affidavits and have been tested by plaintiffs." *Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 75–76 (2d Cir. 2009). Thus:

> [i]f an agency's statements supporting exemption contain reasonable specificity of detail as to demonstrate that the withheld information logically falls within the claimed exemption and evidence in the record does not suggest otherwise . . . the court should not conduct a more detailed inquiry to test the agency's judgment and expertise or to evaluate whether the court agrees with the agency's opinions.

*Id.* at 76 (alterations in original; quoting *Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009)). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Id.* at 73 (quoting *Larson*, 565 F.3d at 862).

As the court previously noted, relevant to FOIA Exemption (b)(1), Mr. Pickering invokes the following limitation from § 1.7 of Executive Order 13,526: "In no case shall information be classified, continue to be maintained as classified, or fail to be declassified in order to . . . conceal violations of law, inefficiency, or administrative error [or] . . . prevent embarrassment to a person, organization, or agency." Exec. Order No. 13,526, § 1.7(a) (Dec. 29, 2009); *see also Kuzma v. IRS*, 775 F.2d 66, 69 (2d Cir. 1985) (per curiam) ("[U]nauthorized or illegal investigative tactics may not be shielded from the public by use of FOIA exemptions."). Mr. Pickering asserts that the FD-302 shows that the CIA violated the law by "play[ing] a role in the FBI's probe of Plaintiff although it did not have the authority to do so." (Doc. 15 at 3.)

The CIA does not dispute that § 1.7 of Executive Order 13,526 prohibits classification of materials to conceal violations of law. Nor does the CIA dispute that it has "no authority to gather intelligence on domestic matters." *Birnbaum v. United States*, 588 F.2d 319, 329 (2d Cir. 1978); *see also* 50 U.S.C. § 3036(d)(1) (the CIA has "no police, subpoena, or law enforcement powers or internal security functions"). But the CIA relies on the declaration of its Litigation Information Review Officer, Mary C. Williams, including her assertion that:

4

> [M]y determination that the existence or nonexistence of the requested records is a classified fact has not been made to conceal violations of law, inefficiency, or administrative error; to prevent embarrassment to a person, organization, or agency; to restrain competition; or to prevent or delay the release of information that does not require protection in the interests of national security.

(Doc. 11-1 ¶ 25.) The CIA maintains that Ms. Williams's declaration is sufficiently detailed and that Mr. Pickering's position constitutes nothing more than speculation. (Doc. 23-1 at 9.)

The court agrees that speculation is insufficient to justify in camera review in the *Glomar* context. As stated in *Wilner*, if the agency's statements "demonstrate that the withheld information logically falls within the claimed exemption," then there is no cause for a "more detailed inquiry" unless "*evidence* in the record" suggests otherwise. *Wilner*, 592 F.3d at 76 (emphasis added; quoting *Larson*, 565 F.3d at 865). "[S]peculative and generalized assertions of wrongdoing" do not constitute such contrary evidence (or evidence of bad faith). *Platsky v. Nat'l Sec. Agency*, No. 15-cv-1529, 2016 WL 3661534, at *6 (S.D.N.Y. July 1, 2016).

Here, somewhat like Henry Platsky's criticisms of the CIA, *see id.*, Mr. Pickering suggests that the CIA has wrapped a "veil of secrecy" around its purported "involvement in domestic political surveillance." (Doc. 15 at 4.) That generalized assertion alone is insufficient to warrant in camera review. Unlike in *Platsky*, however, Mr. Pickering has produced documentation of an FBI investigation pertaining to him, and the FBI document Form FD-302 references the CIA.

The heavily redacted FBI Form FD-302 references the CIA only "briefly." (Doc. 23-1 at 9.) The document provides no context for that reference to the agency. There are many possible reasons why the Form FD-302 might mention the CIA without implicating unlawful domestic surveillance by that agency. However, in this case, the court concludes that "questions remain" as to the CIA's potential involvement in the domestic investigation into ELF and Mr. Pickering. *Wilner*, 592 F.3d at 75. In camera review can resolve those questions expediently.

5

The court has considered the CIA's suggestion that in camera review "would defeat the very purpose of the *Glomar* doctrine by forcing the agency to acknowledge that it does or does not possess a particular document about a particular individual." (Doc. 23-1 at 10.) On that point, Mr. Pickering asserts that, because the redacted Form FD-302 has already been released, "it is difficult to fathom how requiring Defendant to submit an unredacted copy . . . for *in camera* review will in some manner undermine the *Glomar* doctrine." (Doc. 25 at 3.) Defendant maintains that the Form FD-302 was produced by the FBI, not the CIA, and that "producing the document for *in camera* inspection would force the CIA to acknowledge that it does or does not possess a particular document about a particular individual." (Doc. 26 at 2.)

The Form FD-302 is indisputably an FBI (not CIA) document. If the CIA was not aware of the July 17, 2001, Form FD-302 before this litigation, it now at least has a copy of the redacted version of that document. The court concludes that the following procedure will meet the intent of the *Glomar* doctrine. The court will order the CIA to produce the July 17, 2001, Form FD-302 for in camera review. If the CIA possesses only the redacted version, then that is the document that the CIA shall produce. If the CIA possesses an unredacted version of the Form FD-302, it shall produce that document. The court will review the submission in camera and will not disclose whether the CIA produced the unredacted version unless the CIA in fact possesses that document *and* the reference to the CIA implicates unlawful domestic surveillance by that agency.

## Conclusion

Defendant's Motion to Reconsider (Doc. 23) is DENIED, except that the court modifies the procedure for in camera review as follows. If the CIA possesses only the redacted version of the FBI Form FD-302 dated July 17, 2001, then that is the document that the CIA shall produce.

If the CIA possesses an unredacted version of the Form FD-302, it shall produce that document. The court will review the submission in camera and will not disclose whether the CIA produced the unredacted version unless the CIA in fact possesses that document *and* the reference to the CIA implicates unlawful domestic surveillance by that agency. The court directs the CIA to comply within 30 days of this Order. In camera review shall take place in the chambers of Judge Crawford, 11 Elmwood Avenue, Burlington, VT 05401.

Dated this 24th day of March, 2026.

Geoffrey W. Crawford, Judge
United States District Court